**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Paulina Buhagiar, | No. CV-19-05761-PHX-JJT |
| Plaintiff, | **ORDER** |
| v. | |
| Wells Fargo Bank NA, | |
| Defendant. | |

At issue is Defendant Wells Fargo Bank NA's ("Wells Fargo") Motion for Summary Judgment (Doc. 51, Mot.), to which Plaintiff Paulina Buhagiar ("Ms. Buhagiar") filed a Response[1] (Doc. 53, Resp.), and Defendant filed a Reply (Doc. 56, Reply). The Court has reviewed the parties' briefs and finds this matter appropriate for decision without oral argument. *See* LRCiv 7.2(f). For the reasons set forth below, the Court grants Defendant's Motion.

**I.     BACKGROUND**

Plaintiff, who is Filipino, began working for Defendant in Tempe, Arizona, on May 1, 2017 as an Operations Processor 2 for Defendant's Repossession Administration

---

[1] Plaintiff's Response is 22 pages in length, in violation of the Court's Rule that "[u]nless otherwise permitted by the Court … the response [to a motion] including its supporting memorandum, may not exceed seventeen (17) pages, exclusive of attachments and any required statement of facts." LRCiv 7.2(e)(1). Plaintiff did not obtain leave of Court to exceed the page limit. Non-compliance with the Rule "may be deemed a consent to the denial or granting of [a] motion and the Court may dispose of the motion summarily." LRCiv 7.2(i). The Court will not grant Defendant's Motion on this basis, but the Court will disregard pages 18 through 22 of Plaintiff's Response.

team. (Defendant's Separate Statement of Facts[2] ("SOF") ¶ 1, 31.) Less than a year later, Plaintiff requested to transfer to Salt Lake City, Utah. (SOF ¶ 2.) Plaintiff's transfer request was approved, and on September 13, 2018 she began working as an Account Resolution Specialist 2 for the Education Financial Services department at Defendant's Salt Lake City location. (SOF ¶ 2). Less than two months later, Plaintiff requested to transfer back to Arizona, which Defendant approved. (SOF ¶ 3-5.) On November 5, 2018, Plaintiff began working as an Operations Processor 3 in the Auto Loss Recovery Operations department at Defendant's Chandler, Arizona branch, where she reported to Annette Badon ("Ms. Badon"). (SOF ¶ 6-7.)

In her role as an Operations Processor 3, Plaintiff was tasked with entering transactions into a record system, balancing general ledger accounts, resolving complex customer issues, and processing returned mail.[3] (SOF ¶¶ 10, 21-22.) Defendant contends that Plaintiff exhibited performance issues in this role. (SOF ¶¶ 12-24; Resp. at 2-3.) In

---

[2] Plaintiff did not file a Controverting Statement of Facts as required by Local Rule of Civil Procedure 56.1(b). The Rule sets the following parameters:

> (1) for each paragraph of the moving party's separate statement of facts, a correspondingly numbered paragraph indicating whether the party disputes the statement of fact set forth in that paragraph and a reference to the specific admissible portion of the record supporting the party's position if the fact is disputed; and (2) any additional facts that establish a genuine issue of material fact or otherwise preclude judgment in favor of the moving party. Each additional fact must be set forth in a separately numbered paragraph and must refer to a specific admissible portion of the record where the fact finds support.

LRCiv 56.1(b). While Plaintiff failed to comply with this Rule, she nonetheless directed the Court to the facts she disputes in her Response. Thus, in its discretion, the Court will not order Plaintiff to submit a Controverting Statement of Facts. *See* LRCiv 56.1(g). But the Court notes that Plaintiff's counsel took an oath upon admission to practice in this Court to uphold and follow all applicable rules, including the Local Rules, and he did not do so here.

[3] Plaintiff takes inconsistent positions as to whether processing returned mail was one of her job functions. On the second page of Plaintiff's Response, she acknowledges that her job duties included "processing returned mail." (Resp. at 2.) However, on the fourth page, she writes that she was sent "to the mail room to process mail, which was not a function of her role." (Resp. at 4.) Plaintiff admitted during her deposition that she was never moved to a mail room, so it is unclear whether she is taking the position that processing mail in a mail room was not part of her role, or whether processing mail in general was not part of her role. (*See* SOF Ex. 11, Deposition of Paulina Buhagiar ("Buhagiar Dep.") 176:17-25.) Regardless, the Court can resolve the issues at hand without clarification from Plaintiff.

In

1   part, Defendant attributes Plaintiff's performance issues to the fact that she was working

2   too quickly, and also that she was not taking notes during trainings. (SOF ¶¶ 15-17.) As a

3   result, Defendant claims that Ms. Badon confronted Plaintiff about the quality of her work

4   and told her to slow down. (SOF ¶¶ 18-19.) Plaintiff, on the other hand, denies that she was

5   making errors or otherwise disrupting her department, and denies that she was confronted

6   by Ms. Badon. (Resp. at 2.)

7          On January 9, 2019, following a January 8[4] meeting with Ms. Badon and her other

8   team members, Plaintiff met with Randy Richardson ("Mr. Richardson"), her second level

9   manager, to discuss her feelings of being "harassed, singled out, and chastised." (SOF ¶¶ 25-

10  26; Resp. at 3.) Plaintiff alleges that after her complaint to Mr. Richardson, she was assigned

11  to process mail. (Resp. at 3, Pl.'s Ex. 2 at 1.) That same day Plaintiff also filed an "eForm"

12  requesting a consultation with Human Resources regarding "a concern with another team

13  member or manager." (SOF ¶ 27.) On January 11, 2019, Plaintiff spoke with Wells Fargo

14  HR Specialist James Bufford ("Mr. Bufford"), and alleged a harassing work environment,

15  that her peers were upset because she was a fast worker, that her peers gossiped at work and

16  ignored her, and that she had been demoted to mail duty by Ms. Badon, which she believed

17  was in retaliation for her complaint to Mr. Richardson. (SOF ¶ 28; Resp. at 4.) Defendant

18  investigated Plaintiff's concerns, concluded her allegations were unsubstantiated, and closed

19  the investigation. (SOF ¶¶ 29-30, 32-33; Resp. at 4.)

20         On January 28, 2019, Plaintiff informed Ms. Badon that she was experiencing chest

21  pain and having a hard time breathing. (SOF ¶ 34.) Ms. Badon called 9-1-1, and paramedics

22  arrived and took Plaintiff to the Emergency Room. (SOF ¶ 34; Resp. at 4.) Plaintiff was

23  treated for cardiac arrythmias and was prescribed medications. (Resp. at 5.) Plaintiff texted

24  Ms. Badon a photograph of a Return to Work Release from the hospital, which identified

25  her medical condition and stated that she could return to work once she was cleared by a

26

27  [4] The precise dates are unclear from the record. In her Response, Plaintiff alleges the team meeting took place on January 9, 2019, and she requested a meeting with Mr. Richardson following that meeting. (Resp. at 3.) However, when Plaintiff was deposed, she stated that

28  she submitted her complaint to Mr. Richardson on January 8, right after the team meeting on that day. (Buhagiar Dep. 127:20-128:16.)

1    primary care doctor or cardiologist. (SOF ¶ 35; Resp. at 5.) Ms. Badon replied, "Ok no

2    problem just get better." (SOF ¶ 35.) With her cardiologist's approval, Plaintiff returned to

3    work on January 31, 2019. (SOF ¶ 36.) Plaintiff claims that she "immediately sought

4    accommodation based on her medical condition," but was unaware of the process. (Resp.

5    at 5.) When she asked Ms. Badon how to go about seeking accommodation, she claims that

6    she was advised to "call the sick line every day she needed accommodation." (Resp. at 5.)

7        Defendant contends that on January 8, 2019, before her hospital visit, Plaintiff had

8    requested a personal leave of absence from late March through early April to go to the

9    Philippines and resolve some personal issues, which Ms. Badon approved. (SOF ¶¶ 40-41.)

10   Subsequently, Plaintiff requested multiple changes to the start date of her leave, all of

11   which Ms. Badon approved. (SOF ¶¶ 41, 45-48, 50-52, 55-56.) Ultimately, Ms. Badon

12   approved a six-month leave of absence for Plaintiff. (SOF ¶ 51.) Plaintiff disputes

13   Defendant's account and claims that Plaintiff requested a Family and Medical Leave Act

14   ("FMLA") leave of absence to commence January 28, 2019, the same day she was taken

15   to the Emergency Room. (Resp. at 5.) Plaintiff alleges that she received an FMLA leave of

16   absence for six months, set to terminate on August 6, 2019. (Resp. at 6.) Plaintiff also

17   completed intake with the EEOC on January 29, 2019, alleging discrimination by

18   Defendant. (Resp. at 5.) On February 21, 2019, Plaintiff filed a Charge of Discrimination

19   with the EEOC. (Resp. at 6, Pl.'s Ex. 3.)

20       On February 1, 2019, Ms. Badon transferred out of Plaintiff's department and Jami

21   Butler ("Ms. Butler") was assigned as Plaintiff's new supervisor. (SOF ¶¶ 9, 54.) On

22   February 4, 2019, Defendant claims that Plaintiff informed Ms. Butler that she was going

23   on her leave of absence starting February 8, 2019. (SOF ¶ 55.) After February 4, 2019,

24   Plaintiff did not return to work. (SOF ¶ 56.)

25       In March 2019, Plaintiff moved in with her daughter in Utah, where she worked for

26   two other companies. (SOF ¶¶ 71-75.) Plaintiff contends that she sought employment

27   elsewhere because her leave was unpaid, and she needed income to survive. (Resp. at 6.)

28

1     When Plaintiff's leave of absence concluded on August 6, 2019, she did not return

2   to work. (SOF ¶ 61.) Beginning on August 15, 2019, Ms. Butler called Plaintiff multiple

3   times to inquire whether she intended to return to work, and Defendant's leave

4   administrator sent Plaintiff a letter informing her that her time away from work beyond

5   August 6, 2019, was unapproved leave. (SOF ¶¶ 62-64.) Plaintiff explains that she

6   mistakenly understood her FMLA letter to confirm that she was on leave through

7   January 27, 2020. (Resp. at 6.) She was also waiting for a response from the EEOC before

8   returning to work. (Resp. at 6.) On October 10, 2019, Defendant sent Plaintiff a letter

9   explaining that as of that date, it had not received any information regarding her plans to

10   return to work, resulting in the termination of her employment effective October 17, 2019.

11   (SOF ¶ 66.)

12     The EEOC issued a Notice of Right to Sue on September 24, 2019. (Doc. 20,

13   Plaintiff's Second Amended Complaint ("Compl.") ¶ 7.) On December 7, 2019, Plaintiff

14   initiated the present action, alleging claims under Title VII, 42 U.S.C. § 1981, the

15   Americans with Disabilities Act ("ADA"), the FMLA, and also intentional infliction of

16   emotional distress. (Compl.) On August 4, 2020, Plaintiff's counsel stipulated to dismissal

17   of the FMLA claims. (Doc. 29.) Defendants now move for summary judgment on all of

18   Plaintiff's remaining claims.

19   **II.     LEGAL STANDARD**

20     Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is

21   appropriate when: (1) the movant shows that there is no genuine dispute as to any material

22   fact; and (2) after viewing the evidence most favorably to the non-moving party, the

23   movant is entitled to prevail as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*,

24   477 U.S. 317, 322-23 (1986); *Eisenberg v. Ins. Co. of N. Am.*, 815 F.2d 1285, 1288-89 (9th

25   Cir. 1987). Under this standard, "[o]nly disputes over facts that might affect the outcome

26   of the suit under governing [substantive] law will properly preclude the entry of summary

27   judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue"

28

1    of material fact arises only "if the evidence is such that a reasonable jury could return a

2    verdict for the nonmoving party." *Id.*

3    In considering a motion for summary judgment, the court must regard as true the

4    non-moving party's evidence, if it is supported by affidavits or other evidentiary material.

5    *Celotex*, 477 U.S. at 324; *Eisenberg*, 815 F.2d at 1289. However, the non-moving party

6    may not merely rest on its pleadings; it must produce some significant probative evidence

7    tending to contradict the moving party's allegations, thereby creating a material question

8    of fact. *Anderson*, 477 U.S. at 256-57 (holding that the plaintiff must present affirmative

9    evidence in order to defeat a properly supported motion for summary judgment); *First Nat'l

10   Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968).

11   "A summary judgment motion cannot be defeated by relying solely on conclusory

12   allegations unsupported by factual data." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.

13   1989). "Summary judgment must be entered 'against a party who fails to make a showing

14   sufficient to establish the existence of an element essential to that party's case, and on

15   which that party will bear the burden of proof at trial.'" *United States v. Carter*, 906 F.2d

16   1375, 1376 (9th Cir. 1990) (quoting *Celotex*, 477 U.S. at 322).

17   **III.    ANALYSIS**

18   The parties have stipulated to dismiss Plaintiff's FMLA claims, so six causes of

19   action alleged in Plaintiff's Second Amended Complaint remain: (1) national origin/race

20   discrimination in violation of Title VII; (2) retaliation in violation of Title VII; (3) violation

21   of 42 U.S.C. § 1981[5]; (4) disability discrimination in violation of the ADA; (5) retaliation

22   ---
[5] Plaintiff alleges that Defendant denied her "the protections against race discrimination
23   and retaliation provided by Section 1981," indicating that she brings both retaliation and
     discrimination claims under the statute. (Compl. ¶ 44.) However, in her Response, Plaintiff
     also suggests that she is bringing a harassment claim under 42 U.S.C. § 1981. (Resp. at 13-
24   14.) Plaintiff may not raise a new claim for the first time in her Response, so the Court
     addresses it only here. Even if Plaintiff had appropriately pled a harassment claim on the
25   face of her Complaint, it would fail. To state a 42 U.S.C. § 1981 claim of harassment based
     on a hostile work environment, Plaintiff must raise a triable issue of fact as to whether
26   (1) Defendant subjected her to verbal or physical conduct based on her race; (2) the conduct
     was unwelcome; and (3) the conduct was sufficiently severe or pervasive to alter the
27   conditions of her employment and create an abusive working environment. *v. Cal. Water
     Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008). Even if Plaintiff can meet the first and
28   second factors, as a matter of law Plaintiff cannot show that the harassment was severe or
     pervasive enough to alter the conditions of her employment. *See, e.g.*, *Kortan v. Cal. Youth*

- 6 -

1    in violation of the ADA; and (6) intentional infliction of emotional distress ("IIED"). (*See*

2    *generally* Compl.) Plaintiff also seeks punitive damages.

3              **A.       Plaintiff's Discrimination Claims**

4              Title VII prohibits employers from discriminating against an individual based on

5    race, color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a). Similarly, § 1981

6    prohibits discrimination in the "benefits, privileges, terms, and conditions of employment."

7    42 U.S.C. § 1981(b). The standards for analyzing § 1981 claims are the same as those

8    applicable in Title VII disparate treatment cases. *Surrell v. Cal. Water Serv. Co.*, 518 F.3d

9    1097, 1103 (9th Cir. 2008). However, Title VII requires that the Plaintiff exhaust

10   administrative remedies, such as filing a claim with the EEOC, before bringing a private

11   action for damages, while § 1981 does not have the same requirement. *Id.*

12             Because Plaintiff asserts, and Defendants do not dispute, that she filed a charge with

13   the EEOC on February 21, 2019, and the EEOC provided Plaintiff with a Notice of Right

14   to Sue on September 24, 2019, the Court finds that Plaintiff meets the requirements of Title

15   VII exhaustion. (*See* Compl. ¶ 7.) Accordingly, the Court moves forward to discuss the

16   merits of Plaintiff's claims.

17             Plaintiff brings discrimination claims under both Title VII and 42 U.S.C. § 1981.

18   The standards for a *prima facie* discrimination claim are the same under § 1981 and Title

19   VII. *Surrell*, 518 F.3d at 1105 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

20   802 (1973)).

21             Under Title VII, an employer may not "discriminate against an individual with

22   respect to [her] . . . terms, conditions, or privileges of employment" because of her race,

23   color, religion, sex, or national origin. 42 U.S.C. § 2000e–2(a). "This provision makes

24   'disparate treatment' based on [race, color, religion, sex, or national origin] a violation of

25   federal law." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061–62 (9th Cir. 2002).

26

27
_____

28   *Auth.*, 217 F.3d 1104, 1111 (9th Cir. 2000) (no hostile work environment where on several
     occasions the supervisor referred to females as "castrating bitches," "Madonnas," or
     "Regina" in front of the plaintiff, and directly referred to the plaintiff as "Medea").

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

      A plaintiff may present either direct or circumstantial evidence to prove her employment discrimination case. Direct evidence is "evidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 640 (9th Cir. 2006). If the plaintiff fails to produce direct evidence, the Court may evaluate circumstantial evidence using the burden-shifting framework that the Supreme Court established in *McDonnell Douglas Corp. v. Green*. 433 U.S. 792, 802–805 (1973). Under that framework, first, the plaintiff must establish a *prima facie* case of unlawful discrimination by showing that (1) she belongs to a protected class; (2) she was performing her job satisfactorily (or was qualified for a position for which she applied); (3) she was subjected to an adverse employment action; and (4) similarly situated [individuals outside her protected class] were treated more favorably." *Cozzi v. Cnty. of Marin*, 787 F. Supp. 2d 1047, 1057 (N.D. Cal. 2011) (citing *Chuang v. Univ. of Cal. Davis, Bd. of Trustees*, 225 F.3d 1115, 1123 (9th Cir. 2000); *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1281 (9th Cir. 2000)). The degree of proof necessary to establish a *prima facie* case for a Title VII claim on summary judgment "is minimal and does not even need to rise to the level of a preponderance of the evidence." *Id.* (internal citations and quotations omitted).

18

19

20

21

22

23

24

25

26

      "If the plaintiff establishes a *prima facie* case, the burden of production—but not persuasion—then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action . . . . If the employer does so, the plaintiff must show that the articulated reason is pretextual 'either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *Villiarimo*, 281 F.3d at 1062 (internal citations and quotations omitted). A plaintiff may rely on circumstantial evidence to demonstrate pretext, but such evidence must be both specific and substantial. *Id.*

27

28

1
2

### 1.    Plaintiff Cannot Establish a *Prima Facie* Case of Title VII or 42 U.S.C. § 1981 Race or National Origin Discrimination

3

4

5

6

7

8

9

Under the *McDonnell Douglas* framework, "[t]he requisite degree of proof necessary to establish a *prima facie* case for Title VII . . . on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence." *Chuang*, 225 F.3d at 1124 (citation omitted). The parties do not dispute that Plaintiff was part of a protected class based on her race and sex, or that she was subject to an adverse employment action when she was terminated. Defendant instead argues that Plaintiff cannot show that she was meeting its legitimate expectations. (Mot. at 6; Reply at 2.)

10

11

12

13

14

Defendant alleges that Plaintiff failed to meet its legitimate expectations when she refused to return to work after "an exceedingly generous 6 month leave of absence," and therefore cannot establish a *prima facie* case. (Mot. at 6; SOF ¶¶ 62-64.) Defendant notes that it did not hear from Plaintiff at all after her departure, and Plaintiff was "even reminded that her leave had expired." (Mot. at 6; SOF ¶¶ 62-64.)

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Plaintiff argues that the evidence shows that she was performing to Defendant's legitimate expectations for the purposes of her *prima facie* case because she was advanced from Operations Processor 2 to Operations Processor 3. (Resp. at 8; Def.'s Exs. 1, 3.) This argument fails. The exhibits Plaintiff cites to support her claim do not contain any information with respect to her performance—they are simply Defendant's offer letters for the Operations Processor 2 and Operations Processor 3 positions. A plaintiff's bare assertion that she was meeting her employer's legitimate expectations is not sufficient to raise a genuine issue of material fact as to this prong. *See Bradley v. Harcourt, Brace and Co.*, 104 F.3d 267, 270 (9th Cir. 1996) ("[A]n employee's subjective personal judgments of [her] competence alone do not raise a genuine issue of material fact."). Further, as Defendant points out, Ms. Badon, Plaintiff's former supervisor, not only testified that Plaintiff made substantial errors and failed to improve with instruction, but Ms. Badon's log also reflects that Plaintiff had numerous performance deficiencies. (Reply at 3; Def.'s Ex. 9, Declaration of Annette Badon ("Badon Dec.") ¶¶ 7-11; Def.'s Ex. 15.)

1    Plaintiff cannot succeed in establishing a *prima facie* case because she cannot show

2    she was performing in accordance with Defendant's legitimate expectations, so the Court

3    does not consider her argument that her placement on "mail room duty" following her

4    complaint to Mr. Richardson was also an adverse action. (Resp. at 8). Nor does it consider

5    her argument that the "similarly situated" prong of her *prima facie* case is satisfied because

6    Charlotte White, one of her colleagues, also exhibited performance issues and was never

7    placed on "mundane mail room duty." (Resp. at 9.)

8                    **2.      Even if Plaintiff Could Establish a *Prima Facie* Case, Defendant

9                              Has Articulated a Legitimate, Non-Discriminatory Reason for the
                               Adverse Employment Action and Plaintiff Has Not Shown that

10                             Defendant's Reason Could be Pretext**

11   As discussed *supra*, Defendant has met its burden by explaining that Plaintiff was

12   terminated because of her failure to return to work after her leave of absence had ended.

13   (Mot. at 6-7.) An employee can prove pretext either: (1) "directly, by showing that unlawful

14   discrimination more likely motivated the employer"; or (2) "indirectly, by showing that the

15   employer's proffered explanation is unworthy of credence because it is internally

16   inconsistent or otherwise not believable." *Fonseca v. Sysco Food Servs. of Ariz., Inc.*,

17   374 F.3d 840, 849 (9th Cir. 2004) (internal quotation marks omitted) (quoting *Lyons v.

18   England*, 307 F.3d 1092, 1113 (9th Cir. 2002)). "[A] disparate treatment plaintiff can

19   survive summary judgment without producing any evidence of discrimination beyond that

20   constituting his prima facie case, if that evidence raises a genuine issue of material fact

21   regarding the truth of the employer's proffered reasons." *Chuang,* 225 F.3d at 1127.

22   Plaintiff attempts to rebut Defendant's proffered reasons for her termination by

23   raising a constructive discharge argument—she alleges that she would not have failed to

24   return to work but for Defendant's "unabated harassing and discriminatory behavior

25   resulting in a hostile work environment to which a reasonable person would have been

26   forced to resign in lieu of termination." (Resp. at 9-10.)

27   There are several problems with Plaintiff's constructive discharge claim. First,

28   Plaintiff's constructive discharge argument does not appear anywhere in her Second

1   Amended Complaint or MIDP disclosures. Her EEOC charge also does not mention

2   constructive discharge or allege any facts to support such a claim.

3          Second, as Defendant observes in its Reply, Plaintiff never expressly or implicitly

4   resigned, as would be required for a constructive discharge. *See Green v. Brennan,* 578

5   U.S. 547, 550 (2016) ("an employee who was not fired but resigns in the face of intolerable

6   discrimination…[i]s 'constructive[ly]' discharge[d]."). The parties have never disputed

7   that Plaintiff was terminated. (*See generally* Compl.) Finally, Plaintiff fails to articulate

8   how exactly her constructive discharge argument goes to show that Defendant's reason for

9   her termination is internally inconsistent or unworthy of credence, as required to show

10  pretext.

11         A reasonable fact-finder could not find that race was a "motivating factor" in

12  Defendant's decision-making, nor could a reasonable fact-finder conclude that race was

13  *the* motivating factor in Defendant's decision-making, as required under 42 U.S.C. § 1981.

14  42 U.S.C. 2000e-2(m)*;* 42 U.S.C. § 1981. *Compare Comcast Corp. v. Nat'l Assn. of*

15  *African American-Owned Media*, 140 S. Ct. 1009 (2020) with *Bostock v. Clayton Cnty*.,

16  140 S. Ct. 1731 (2020). Plaintiff has not met her burden to prove pretext. Plaintiff has failed

17  to present evidence that creates a genuine issue of material fact as to whether Defendant

18  discriminated against her because of her race or national origin. 42 § U.S.C. 2000e-2(a)(1);

19  42 U.S.C. § 1981. Defendant's Motion for Summary Judgment is therefore granted as to

20  Plaintiff's Title VII and 42 U.S.C. § 1981 discrimination claims. *Celotex,* 477 U.S. at 323.

21         **B.     Plaintiff's Retaliation Claims**

22         Title VII also makes it an unlawful employment practice for an employer to retaliate

23  against an employee because she has opposed any practice made unlawful by Title VII or

24  because she has made a charge, testified, assisted, or participated in any manner in an

25  investigation under Title VII. 42 U.S.C. § 2000e–3(a).

1

2

### 1.    Plaintiff Has Established a *Prima Facie* Case of Title VII or 42 U.S.C. § 1981 Retaliation

The *McDonnell Douglas* burden-shifting framework may also be applied to Title VII retaliation claims. *See Ruggles v. Cal. Polytechnic State Univ.*, 797 F.2d 782, 784 (9th Cir. 1986.) A plaintiff may establish a *prima facie* case of retaliation by showing that (1) she engaged in a protected activity; (2) her employer subjected her to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse action. *Ray v. Henderson*, 217 F.3d 1234, 1240 (9th Cir. 2000). The burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* Finally, the burden shifts back to the plaintiff to show that the defendant's proffered reason was pretext for a discriminatory motive. *Id.*

Defendant argues that Plaintiff's *prima facie* case fails because she cannot establish the requisite causal nexus. (Mot. at 8.) In *University of Texas Southwestern Medical Center v. Nassar*, the Supreme Court decided that a plaintiff has a heightened standard for proving causation in retaliation claims—she must show that her engagement in a protected activity was a "but-for" cause of the defendant's imposition of an adverse employment action. 570 U.S. 338, 362 (2013).

According to Defendant, Plaintiff cannot show that her employment was terminated soon after any alleged protected activity. (Mot. at 8.) Plaintiff's complaint to Mr. Richardson was in January 2019, and she was not terminated until October 2019, roughly nine months after her complaint and eight months after she took her leave of absence. (Mot. at 8-9.) The Court agrees with Defendant that such a substantial time lapse between her complaint and termination indicates that Plaintiff cannot establish the requisite causal nexus. *See Coleman v. Home Health Resources Inc.*, 269 F. Supp. 3d 935, 945 (D. Ariz. 2017) ("An inference of retaliation is not plausible where eight months have elapsed.") (citations omitted).

On the other hand, Plaintiff, without citing a single case to support her argument, contends that her placement in the mail room constitutes a demotion that falls "within the

- 12 -

1   definition of an adverse employment action." (Resp. at 12.) Plaintiff observes that she

2   complained to Mr. Richardson on January 9, 2019, and was moved to the mail room that

3   same day.

4         Plaintiff stated in her deposition that while her desk was never actually moved to

5   the mail room, she was taking mail out of the room back out to her desk. (Buhagiar Dep.

6   176:17-25.) Even though processing mail was one of Plaintiff's job duties, a reasonable

7   jury could find that Plaintiff's relegation to mail processing was a retaliatory adverse

8   action. *See Burlington*, 548 U.S. at 70-71 ("Almost every job category involves some

9   responsibilities and duties that are less desirable than others. Common sense suggests that

10  one good way to discourage an employee . . . from bringing discrimination charges would

11  be to insist that she spend more time performing the more arduous duties and less time

12  performing those that are easier or more agreeable."). Because Plaintiff alleges that her

13  complaint to Mr. Richardson took place either the same day or the day before she was

14  asked to process mail, the Court finds sufficient temporal proximity to satisfy Plaintiff's

15  burden at this stage.

16       **2.**     **Defendant Has Articulated a Legitimate, Non-Discriminatory**

17               **Reason for the Adverse Employment Action and Plaintiff Has Not**

18               **Shown that Defendant's Reason Could be Pretext**

19        As discussed above, Defendant contends that Plaintiff was making substantial errors

20  that were disrupting her department when performing other job duties, in part because she

21  was working so quickly. (Badon Dec. ¶¶ 9-10.) Ms. Badon, Plaintiff's supervisor,

22  determined that processing returned mail was a task that Plaintiff could "easily complete

23  with speed and accuracy." (Badon Dec. ¶ 12.)

24        Because Defendant has articulated a legitimate, non-discriminatory reason for

25  assigning Plaintiff to process mail, the burden shifts back to Plaintiff to show that

26  Defendant's reason could be pretext. The Court applies the same standard for pretext to

27  Plaintiff's retaliation claim that it used for her discrimination claim, discussed *supra*.

28

1      Plaintiff fails to draw the Court's attention to any evidence to rebut Defendant's

2  proffered reasons for its adverse actions. In fact, Plaintiff does not address pretext at all in

3  her Response. (*See* Resp. at 11-12.) Even if Plaintiff had raised arguments on pretext,

4  however, they would fail. Defendant has produced substantial evidence to show that its

5  reasons for moving Plaintiff to process mail were not internally inconsistent or unworthy

6  of credence. As discussed above, Ms. Badon's log reflects that Plaintiff had numerous

7  performance deficiencies. (Reply at 3; Badon Dec. ¶¶ 7-11; Def.'s Ex. 15.) Plaintiff has

8  produced no evidence to the contrary. Accordingly, no genuine issues of material fact

9  remain, and summary judgment is appropriate for Plaintiff's Title VII or 42 U.S.C. § 1981

10  retaliation claims.

11      **C.   Plaintiff Cannot Establish a *Prima Facie* Case of ADA Discrimination or Retaliation**

12

13      The ADA provides that "[n]o covered entity shall discriminate against a qualified

14  individual with a disability because of the disability of such individual in regard to . . .

15  discharge of employees . . . and other terms, conditions, and privileges of employment."

16  42 U.S.C. § 12112(a).

17      To establish a *prima facie* case of disability discrimination, a plaintiff must show

18  she (1) is disabled; (2) is a qualified individual; and (3) has suffered an adverse employment

19  action because of her disability. *Mayo v. PCC Structurals, Inc.*, 795 F.3d 941, 944 (9th Cir.

20  2015); *see* 42 U.S.C. § 12111(8). "The term 'disability' means, with respect to an

21  individual – (A) a physical or mental impairment that substantially limits one or more

22  major life activities of such individual; (B) a record of such an impairment; or (C) being

23  regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)–(C); *Nunies v. HIE*

24  *Holdings, Inc.*, 908 F.3d 428, 433 (9th Cir. 2018). To trigger the employer's duty to engage

25  in the ADA "interactive process," an employee must first notify its employer of the need

26  for an accommodation. *Nunies*, 908 F.3d at 433. The employee "must make clear that the

27  employee wants assistance for his or her disability." *Taylor v. Phoenixville Sch. Dist.*,

28  184 F.3d 296, 313 (3d Cir.1999).

1      Defendant argues that Plaintiff's ADA claims fail for several reasons. First,

2  Defendant alleges that Plaintiff cannot show that she was disabled. Not only did Plaintiff

3  fail to inform Defendant that she had a disability as defined by the ADA, meaning that its

4  duty to engage in the "interactive process" was never triggered, but Plaintiff's Complaint

5  also fails to identify the type of accommodation she requested. (Mot. at 13.) Because

6  Plaintiff has not presented any evidence to this effect, Defendant argues she cannot prevail

7  on her ADA discrimination claim. (Mot. at 13.)

8      Plaintiff may argue that in sending a photograph of her Return to Work Release

9  from the hospital to Ms. Badon, she put Defendant on notice of her condition, triggering

10  the ADA's interactive process. (SOF ¶ 35; Resp. at 5.) However, Plaintiff's actions were

11  not sufficient to put Defendant on notice of her disability or her desire for accommodations.

12  "In general … it is the responsibility of the individual with a disability to inform the

13  employer that an accommodation is needed." 29 CFR to Part 1630 Interpretive Guidance

14  on Title I of the Americans With Disabilities Act (Code of Federal Regulations (2021

15  Edition)). Nor does the evidence indicate that Plaintiff's alleged disability was a "physical

16  or mental impairment that substantially limits one or more major life activities." 42 U.S.C.

17  § 12102(1)(A). Further, the fact that Plaintiff worked for two separate companies in Utah

18  during her leave of absence—and Plaintiff has presented no evidence to show that she

19  requested or received any accommodations for either of these positions—militates against

20  Plaintiff's position that she was disabled within the meaning of the ADA.

21      Second, Defendant alleges that Plaintiff cannot show she was qualified for her job

22  because: (1) she refused to return to work, and (2) she showed an inability to perform the

23  functions of her job. The only evidence Plaintiff cites anywhere in her Response to show

24  that she was qualified is her offer letter for the Operations Processor 3 position. (*See* Def.'s

25  Ex. 3.) Although the Court found the offer letter insufficient to show that Plaintiff was

26  performing to Defendant's legitimate expectations, it could help support Plaintiff's

27  argument that she was qualified for her position. However, other facts undercut Plaintiff's

28  qualifications. Most obviously, Plaintiff's refusal to return to work, her move to Utah, and

1   her employment with two other companies during her leave of absence show that she was

2   not qualified to work for Defendant. Plaintiff's proffered reasons for her failure to return

3   to work are immaterial—a pending EEOC charge does not excuse her failure to return, nor

4   did Plaintiff inform Defendant that she was refusing to return to work for this reason.

5   (DSOF ¶ 63.)

6          As to Plaintiff's ADA retaliation claim, Plaintiff bears the initial burden of proving

7   "that the desire to retaliate was the but-for cause of the challenged employment action."

8   *Nassar*, 570 U.S. at 352. Defendant alleges that Plaintiff cannot establish the requisite

9   causal connection because she has offered no evidence to support her claim that

10  Defendant's adverse actions were driven by discriminatory or retaliatory motives. (Mot. at

11  13.) The Court agrees. Plaintiff was directed to process returned mail on January 9, 2019,

12  but her hospital visit was not until January 28, 2019. (SOF ¶¶ 23, 34.) It is therefore

13  impossible that Plaintiff's medical condition was the but-for cause of her assignment to

14  process mail. Likewise, Plaintiff cannot show that her alleged disability was the but-for

15  cause of her termination. Plaintiff never claimed that she needed additional leave to address

16  her medical issues—as discussed in the preceding paragraph, she simply refused to return

17  to work. Even viewing the facts in the light most favorable to Plaintiff, no reasonable jury

18  could find Defendant's actions to be retaliatory. Plaintiff's ADA discrimination and

19  retaliation claims fail as a matter of law.

20          **D.     Plaintiff's Intentional Infliction of Emotional Distress Claim**

21          To prevail on a claim for IIED under Arizona law, a plaintiff must show: (1) that

22  the defendant committed extreme and outrageous conduct; (2) that the defendant intended

23  to cause emotional distress or recklessly disregarded the near certainty that such distress

24  would result from his conduct; and (3) that severe emotional distress occurred as a result

25  of the defendant's conduct. *Citizen Publ'g Co. v. Miller*, 115 P.3d 107, 110 (Ariz. 2005).

26  In Arizona, the trial court decides whether the alleged acts are sufficiently outrageous to

27  state a claim for relief. *Johnson v. McDonald*, 3 P.3d 1075, 1080 (Ariz. Ct. App. 1999). A

28  plaintiff must show that the defendant's conduct was "so outrageous in character, and so

1    extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as

2    atrocious and utterly intolerable in a civilized community." *Id.* (internal quotes and

3    citations omitted). It is "extremely rare to find conduct in the employment context that will

4    rise to the level of outrageousness necessary to provide a basis for recovery for the tort of

5    intentional infliction of emotional distress." *Cox v. Keystone Carbon Co.*, 861 F.2d 390,

6    395 (3d Cir.1988), *cert. denied*, 498 U.S. 811, 111 S.Ct. 47, 112 L.Ed.2d 23 (1990).

7        Defendant relies on *Mintz v. Bell Atlantic Sys. Leasing Int'l, Inc.* to support its

8    position. 905 P.2d 559, 563 (Ariz. App. 1995). There, the plaintiff brought an IIED claim

9    arising from several acts by her employer, which included failing to promote the plaintiff

10   and forcing her to return to work before she was prepared to do so. *Id.* at 563. The *Mintz*

11   Plaintiff even alleged that her employer hand delivered a warning concerning her

12   employment status while she was in the hospital. *Id.* Nonetheless, the court found that the

13   employer's actions did not go "beyond all possible bounds of decency even if it was

14   motivated by sex discrimination or retaliation." *Id.*

15       Plaintiff's allegations, even if taken as true, do not go "beyond all possible bounds

16   of decency." *See Johnson*, 3 P.3d at 1080. Plaintiff alleges that her emotional distress was

17   caused by: (1) warnings from her supervisor that she worked too fast and needed to slow

18   down; (2) her co-worker receiving preferential treatment despite making numerous

19   mistakes; (3) being sent to work in the mail room; (4) becoming the "butt of jokes" because

20   of her alleged demotion to the mail room; and (5) her co-workers not speaking to her.

21   (Compl. ¶ 11.) As a matter of law, these allegations are insufficient to support an IIED

22   claim. Defendant's Motion for Summary Judgment is granted as to Plaintiff's IIED claim.

23       Because Defendant is entitled to prevail as a matter of law on all of Plaintiff's

24   claims, the Court does not reach the issue of punitive damages.

25       **IT IS THEREFORE ORDERED** granting Defendant's Motion for Summary

26   Judgment in its entirety. (Doc. 51.)

27

28

1    **IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment

2  accordingly and close this matter.

3    Dated this 19th day of July, 2022.

4

5    Honorable John J. Tuchi
     United States District Judge

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28